1
**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
2
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
3
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
4
San Francisco, CA 94111
5
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469
6

7
Attorneys for Plaintiff

8
UNITED STATES DISTRICT COURT FOR THE

9
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10   SHERRIS MINOR as an individual, on behalf of herself, the general public and those similarly situated, | CASE NO. |
| 11 | |
| 12        Plaintiff, | **CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS** |
| 13 | **LEGAL REMEDIES ACT; FALSE AD-VERTISING; FRAUD, DECEIT,** |
| 14        v. | **AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES;** |
| 15   BAKER MILLS, INC.; and KODIAK CAKES, LLC, | **AND UNJUST ENRICHMENT** |
| 16 | |
| 17        Defendants. | JURY TRIAL DEMANDED |

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.     Plaintiff Sherris Minor by and through her counsel, brings this class action against Defendants Baker Mills, Inc. and Kodiak Cakes, LLC, to seek redress for Defendants' deceptive practices in labeling and marketing their Kodiak Cakes Flapjack and Waffle Mixes ("Kodiak Cakes Mixes").

2.     Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein to support weight loss, exercise, and general fitness, among other perceived health benefits of protein consumption.

3.     To capitalize on this trend, Defendants prominently label their Kodiak Cakes Mixes as containing 14g, 13g, 12g, 10g, or 8g of protein per serving depending on the flavor. Consumers, in turn, reasonably expect that each serving will provide the actual amount of protein that the label claims it will.

4.     In truth, however, Defendants' Kodiak Cakes Mixes do not contain the amount of protein that the labels claim. Based on amino acid content testing, Defendants' products contain approximately 17% less protein than claimed, meaning, for example, rather than having 14 grams of protein per serving, Defendants' product actually has only 11.5 grams.

5.     Further, Defendants' products are also misbranded. Parallel state and federal regulations require any product that makes a protein claim to include in the nutrition facts panel a percentage of the daily value of the protein in the product based on its amino acid content and digestibility score. Defendants' products prominently make protein content claims but fail to provide the required percent daily value of protein.

6.     Defendants' misrepresentations and misbranding caused Plaintiff and members of the class to pay a price premium for the products.

**PARTIES**

7.     Sherris Minor ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Pleasant Hill, California (Contra Costa County); Emoryville, California (Alameda County); or Oakland, California (Alameda, County).

8.     Defendant Baker Mills, Inc. is a corporation existing under the laws of the State of

Utah, having its principal place of business in Utah.

9.    Defendant Kodiak Cakes, LLC is a limited liability company existing under the laws of the State of Delaware, having its principal place of business in Utah.

10.    The Parties identified in paragraphs 8-9 of this Complaint are collectively referred to hereafter as "Defendants."

### JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and at least one Defendant are citizens of different states.

12.    The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California. Defendants regularly conduct and/or solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

14.    In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Kodiak Cakes Mixes in Pleasant Hill, California; Emoryville, California; and Oakland, California. (Plaintiff's declaration is attached hereto as Exhibit A.)

15.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

### SUBSTANTIVE ALLEGATIONS

16.    Defendants manufacture, distribute, market, advertise, and sell flapjack and waffle mixes in the United States under the brand name "Kodiak Cakes." Defendants' packaging for the following varieties of Kodiak Cakes Mixes predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "14g Protein" per serving:

    a.   Strawberry Chocolate Chip

    b.   Cinnamon Oat

    c.   Buttermilk

    d.   Dark Chocolate

    e.   Peanut Butter

    f.   Almond Poppy Seed

    g.   Carb-Conscious Buttermilk

    h.   Chocolate Chip

17.     Defendants' packaging for the following varieties of Kodiak Cakes Mixes predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "13g Protein" per serving:

    i.   Frontier Oat

18.     Defendants' packaging for the following varieties of Kodiak Cakes Mixes predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "12g Protein" per serving:

    j.   Plant Based Classic

19.     Defendants' packaging for the following varieties of Kodiak Cakes Mixes predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "10g Protein" per serving:

    k.   Pumpkin Flax

20.     Defendants' packaging for the following varieties of Kodiak Cakes Mixes predominately, uniformly, and consistently state on the principal display panel of the product labels that they contain "8g Protein" per serving:

    l.   Whole Wheat, Oat & Honey

21.     The products referenced in Paragraphs 16-20 are referred to collectively herein as the "Kodiak Cake Mixes" or the "Products".

22.     The representation that the Products contain "14g protein," "13g protein," "12g protein," "10g protein," and "8g protein" per serving respectively, was uniformly communicated

to Plaintiff and every other person who purchased any of the Products in California. The same or substantially similar product label has appeared on each respective product during the entirety of the Class Period in the general form of the following example:



23.    The nutrition facts panel on the side of the product likewise repeats the protein content claims, although it fails to provide any referenced percent the daily value of its protein content as state and federal regulations require. The side panel of the product has appeared consistently throughout the Class Period in the general form of the following example:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    24.    As described in detail below, Defendants' advertising and labeling of the Products

20  as containing "14g protein," "13g protein," "12g protein," "10g protein," and "8g protein" per

21  serving respectively, is false, misleading, and intended to induce consumers to purchase the

22  Kodiak Cakes Mixes at a premium price, while ultimately failing to meet consumer expectations.

23  These representations deceive and mislead reasonable consumers into believing that a serving of

24  the Product will contain the grams of protein as represented on the label, when in fact, protein

25  content testing reveals that a serving contains approximately 17% fewer grams of protein than

26  claimed.

27
28

**Consumer Demand for Protein**

25.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items. This is especially true in the community of athletes, registered dietitians, and coaches, to which Defendants market. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Indeed, the FDA recommends relying on Nutrition Facts Labels as the primary tool to monitor the consumption of protein.[1]

26.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[2] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

27.     Athletes and fitness enthusiasts typically consume much higher amounts of protein each day; typically between 1 to 1.5 grams of protein for every pound of body weight.

28.     The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3 years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[3]

29.     Athletes, dieticians, and coaches are particularly concerned about incorporating protein into their diets both pre and post workout. Protein is the building block of muscles. There-

---

[1] FDA Protein Fact Sheet,
https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf
[2] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients)*.
[3] *Id.*

fore, consumers trying to gain muscle seek to ensure their protein intake is sufficiently high to promote muscle growth and prevent muscle loss. Many studies report that consuming protein after exercise can aid recovery by reducing muscle damage and improving muscle performance.

30.     The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce cholesterol, and control for risk factors for cardiovascular diseases.

31.     Proteins are not a monolithic substance, but instead come in many varieties. Proteins are essentially chains of different amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein that is ingested changes the function of the protein in the body, and certain types of proteins are more easily digested by humans than others.

32.     Typically, a "complete protein" is a protein that contains all nine essential amino acids. An essential amino acid is one that the human body cannot produce on its own and must be obtained through diet. Essential amino acids may be measured by the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), which FDA regulations rely on for the calculation of Daily Reference Values ("DRV"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p.29, Question N. 22.

33.     The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then multiply that number by humans' ability to digest the amino acid profile.

34.     Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important. Whey protein is animal-based and contains all nine essential amino acids. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids.

35.     Defendants use both whey protein and plant-based proteins in their products. Defendants claim "We use a variety of protein sources in our products to help you meet your individual requirements. Whole grain oats and wheat both have protein in them naturally. Our

primary source of added protein is whey protein, wheat protein, and milk protein. Other secondary sources come from egg and pea proteins."

**Federal and State Regulations Governing Food Labeling**

36.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . *shall be given if a protein claim is made for the product* . . ." 21 C.F.R. 101.9(c)(7)(i) (emphasis added).

37.     Although FDA guidance provides that a declaration of the DRV for protein is "not mandatory" in typical circumstances, that same guidance is equally clear that "[t]he percent of the DRV is required if a protein claim is made for the product."[4]

38.     Further, FDA regulations require the DRV to be calculated using amino acid analysis, more specifically the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p. 29, Question N.22. The PDCAAS method does not calculate protein content by nitrogen combustion, which is otherwise permitted under 21 C.F.R. § 101.9(c)(7) for products that do not make protein content claims.[5]

39.     Accordingly, when a product makes a protein content claim, FDA regulations require manufacturers to calculate the amount of amino acids that the food contains and then multiply that amount by humans' ability to digest the amino acid profile to come up with a percent daily value.

40.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the

---

[4] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).
[5] Specifically, the regulation states that the grams of protein figure in the nutrition fact box "may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food."

Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code §

110100 ("All food labeling regulations and any amendments to those regulations adopted pursu-

ant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the

food labeling regulations of this state."). The federal laws and regulations discussed below are

applicable nationwide to all sales of packaged food products. Additionally, no state imposes dif-

ferent requirements on the labeling of packaged food for sale in the United States.

41.    Under the FDCA, the term false has its usual meaning of "untruthful," while the

term misleading is a term of art that covers labels that are technically true, but are likely to de-

ceive consumers. Under the FDCA, if any single representation on the labeling is false or mis-

leading, the entire food is misbranded, and no other statement in the labeling can cure a

misleading statement.

42.    Further in addition to its blanket adoption of federal labeling requirements, Cali-

fornia has also enacted a number of laws and regulations that adopt and incorporate specific enu-

merated federal food laws and regulations. See California Health & Safety Code § 110660

(misbranded if label is false and misleading); and California Health & Safety Code § 110705

(misbranded if words, statements and other information required by the Sherman Law are either

missing or not sufficiently conspicuous).

43.    Under California law, a food product that is "misbranded" cannot legally be manu-

factured, advertised, distributed, sold, or possessed. Misbranded products have no economic value

and are legally worthless.

44.    Representing that the Kodiak Cakes Mixes contain "14g protein," "13g protein,"

"12g protein," "10g protein," and "8g protein" per serving respectively, is a statement of fact, and

use of these phrases on the labels of packaged food is limited by the aforementioned misbranding

laws and regulations.

**Defendants' Marketing and Labeling of their Kodiak Cakes Mixes Violates State and Federal Food Labeling Laws**

45.    Defendants' Products are unlawful, misbranded, and violate the Sherman Law,

California Health & Safety Code § 110660, et seq., because the Products' labels state that each

serving of Kodiak Cakes Mix contains "14g protein," "13g protein," "12g protein," "10g protein,"

and "8g protein" per serving respectively, when, in fact, amino acid content testing reveals that the Products contains approximately 17% fewer grams of protein than claimed.

46.    Further, Defendants make protein content claims on the front of their packages and yet have left the Percent Daily Value column of its nutrition facts for protein completely blank. Because Defendants made a protein content claim, they were statutorily obligated to calculate the protein content of their products via the amino analysis described above and to provide a percent daily value figure using the PDCAAS method described above. Defendants have failed to do so, and their Products are accordingly misbranded.

47.    Defendants' marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, et. Seq.), including but not limited to:

    a.    Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.    Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

    c.    Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

48.    Defendants' marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

    d.    Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

    e.    Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

f.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

g.  Section 110765, which makes it unlawful for any person to misbrand any food; and

h.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

49.  Defendants have violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

50.  A reasonable consumer would expect that the Products contain what Defendants identify them to contain on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable con-sumer would expect that when Defendants label their Products as containing "14g Protein" per serving, the Products would contain 14 grams of protein per serving. However, based on amino acid content testing conducted by Plaintiff's counsel, Defendants' Products contain approximately 17% less protein per serving than claimed.

51.  Consumers lack the meaningful ability to test or independently ascertain the truth-fulness of Defendants' food labeling claims, especially at the point of sale. Consumers would not know the true protein content of the Products merely by looking elsewhere on the product pack-age. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a Kodiak Cakes Mix does not con-tain the number of grams that is represented on the label, and instead contains 17% fewer grams. That, combined with Defendants' active concealment in representing that the Products contain "14g protein," "13g protein," "12g protein," "10g protein," and "8g protein" per serving respec-tively, and not disclosing otherwise anywhere on the label much less by listing the Protein DRV as it is required to do, gave the average reasonable consumer no reason to suspect that Defen-

dants' representations on the packages were not true, and therefore consumers had no reason to investigate where the Products actually do contain "14g protein," "13g protein," "12g protein," "10g protein," and "8g protein" per serving respectively. Thus, reasonable consumers relied on Defendants' representations regarding the nature of the Products.

52.    Defendants intend and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done with the claim that their Kodiak Cakes Mixes contain "14g protein," "13g protein," "12g protein," "10g protein," and "8g protein" per serving respectively.

**Defendants' Website and Other Marketing Confirms That Defendants Intend to Deceive Consumers**

53.    Defendants' own advertising and marketing materials show that Defendants intended to deceive consumers into believing the false and deceptive packaging of the Products.

54.    For example, Defendants' website located at https://www.kodiakcakes.com ("Defendants' website") claims that its Kodiak Cakes Mixes are "Protein Packed." Defendants' website encourages consumers to buy their Products, which they describe as "giv[ing] you the fuel to sustain you all day long."

55.    The "Our Mission" page of Defendants' website explains that their Products contain protein because protein "plays an important part in our everyday lives, from powering us through big adventures to keeping us full and energized during busy days," and is "a key factor in muscle recovery after a tough workout." It goes on to boast "Combining the nourishment of whole grains with the benefits of high-quality protein just makes sense, so we add high-quality protein to many of our products and give you the option to add even more to your diet by using milk and an egg. Plus, you won't have to suffer through another chalky protein breakfast shake again. You're welcome." A screenshot of Defendants' "Our Mission" page appears below:

56.     Defendants' website encourages consumers to use their Products in baking anything from Fish and Chips to Strawberry Chocolate Chip Cupcakes to Cake Batter Blondies ("[Y]ou don't have to feel too guilty about having two, or three!"), claiming "The goodness doesn't stop at breakfast. Check out these versatile, delicious recipes that can transform your favorite Kodiak Cakes mix into something completely unexpected." By promoting the use of its Products in baking foods, Defendants intend to lead consumers to believe that the foods that otherwise lack nutritional value can now be a source of healthy nutrients.

57.     In short, Defendants' advertising and marketing campaign confirms that Defendants intend that consumers be effectively deceived by Defendants' misrepresentations on the Products' labels. More specifically, Defendants intend that consumers who read the Products' labels believe that the Products contain the number of grams of protein listed on the front of the label.

**Defendants Misleadingly Market Their Kodiak Cakes Mixes to Increase Profits and Gain a Competitive Edge**

58.     Defendants' website explains their perceived competitive advantage, stating: "Whether you're training for your first half-marathon, prepping for a big day on the trail, or just adopting a healthier diet, the need for real, nourishing food remains the same. We've taken care to

craft our foods with the wholesome nutrients, freshly ground whole grains, and essential protein you need to conquer your frontier."

59.     In making false, misleading, and deceptive representations, Defendants distinguish their Kodiak Cakes Mixes from competitors' products. Defendants knew and intended that consumers would purchase, and pay a premium for, protein products labeled as having more protein than the Products actually contain over comparable protein sources that do not contain misleading representations on the product labels. For example, Defendants' website states, "[r]esearch . . . shows that consuming whey protein in combination with carbohydrates post-workout is an excellent way to stimulate muscle growth, recovery, and reduce muscle soreness. For this reason, Kodiak Cakes are a perfect pre or post-workout breakfast option for athletes. Our Kodiak Cakes cups are a great on-the-go breakfast or snack athletes can throw in their gym bag before playing in a game or tournament." By using this branding and marketing strategy, Defendants are stating that its protein products are superior to, better than, and more nutritious and healthful than other forms of protein products that do not misrepresent the number of grams of protein on their labels.

**Defendants Intend to Continue to Market their Products as Containing More Protein than the Products Actually Contain**

60.     Because consumers pay a price premium for protein supplement products that contain more protein, by labeling their Products as containing more grams of protein per serving than they actually contain, Defendants are able to both increase their sales and retain more profits.

61.     Defendants engaged in the practices complained of herein to further their private interests of: (i) increasing sales of their Products while decreasing the sales of competitors that do not misrepresent the number of grams of protein contained in their products, and/or (ii) commanding a higher price for their Products because consumers will pay more for these Kodiak Cakes Mixes due to consumers' demand for products containing more protein.

62.     The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in their Products, Defendants have an incentive to continue to make such false representations. In addition, other trends suggest that Defendants have no incentive to change their labeling practices.

63.     For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[6]

64.     To capitalize on the growing market, since 2014, Defendants have expanded their product line from Kodiak Cakes Mixes, to frozen waffles, baking mixes, oatmeal, granola, and snacks and have continued to replicate their misrepresentations on the new product lines. Defendants' co-founder has stated regarding the company's focus on protein, "One success factor is sticking to your position. It was taking a long time to get Kodiak Cakes to where we wanted, and we did wonder if should do a white flour pancake mix. I formulated a really good white flour mix, but the best thing we ever did was not launch it. We're all about the whole grain and protein."[7] Defendants continue to launch new product lines and flavors to diversify their portfolio to maintain their competitive edge, making it likely that Defendants will continue to misleadingly advertise their Products and perpetuate the misrepresentations regarding the number of grams of protein in its Products.

## PLAINTIFF'S EXPERIENCE

65.     Plaintiff has purchased at least ten of Defendants' Kodiak Cakes Mixes from various Sprouts Farmers Market, Target, and Safeway stores throughout the East Bay in Northern California over the past year. She typically purchased the Buttermilk flavor.

66.     Plaintiff made each of her purchases after reading and relying on the truthfulness of Defendants' product label that promised the Products contained "14g Protein" per serving of the Buttermilk flavor. She was attracted to the Products because, when given a choice, she prefers to buy quick and easy breakfast items that support her active physical fitness levels and high protein diet. But on each of the Products she purchased, Defendants misrepresented the protein contents of the Products as containing 17% more grams of protein than they actually contain.

---

[6] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright
[7] Stephen Daniells, *Kodiak Cakes' CEO: "We're Growing 80% Year-on-Year and Approaching $100 Million,"* FOOD NAVIGATOR USA, Jan. 24, 2018, https://www.foodnavigator-usa.com/Article/2018/01/24/Kodiak-Cakes-CEO-We-re-growing-80-year-on-year-and-approaching-100-million.

67.    At the time of each of her purchases of the Products, Plaintiff did not know that the Products did not contain the amount of protein represented on the label. As a result of Defendants' misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Plaintiff.

68.    Plaintiff not only purchased the Products because its label said that it contained "14g Protein" per serving, but she also paid more money for the Products than she would have paid for other or a similar protein product that was not mislabeled regarding the number of grams of protein it contained.

69.    Had Defendants not misrepresented (by omission and commission) the true nature of the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products.

70.    Plaintiff continues to desire to purchase protein products, including those marketed and sold by Defendants. If Defendants' Products were reformulated to contain the grams of protein that are represented on the labels, Plaintiff would likely purchase Defendants' Products again in the future. Plaintiff regularly visits stores where Defendants' Products and other protein products are sold. Because Plaintiff does not know the formula for Defendants' products and cannot test whether or not the Products contain the amount of protein that is represented on the label, Plaintiff will be unable to rely on Defendants' labels when shopping for protein products in the future absent an injunction that prohibits Defendants from labeling their products with the incorrect number of grams of protein that each serving contains. Should Defendants begin to market and sell a new line of products, Plaintiff could be at risk for buying another one of Defendants' products in reliance on the same or similar misrepresentation.

71.    Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

**CLASS ALLEGATIONS**

72.     Plaintiff brings this class action lawsuit on behalf of herself and proposed classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent he following groups of similarly situated persons, defined as follows:

> All persons in the State of California who purchased the Products between April 9, 2016 and the present.

73.     This action has been brought and may properly be maintained as a class action against Defendants because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

74.     Numerosity: Plaintiff does not know the exact size the Class, but she estimates that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

75.     Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

    a.   The true nature of the protein content in the Products;

    b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive and/or unlawful because of misrepresentations;

    c.   Whether Defendants' actions violate Federal and California laws invoked herein;

    d.   Whether labeling the Products as containing more grams of protein than they actually contain causes the Products to command a price premium in the market as

compared with similar products that do not make such misrepresentations;

e.  Whether Defendants' advertising and marketing regarding the Products sold to the class members was likely to deceive reasonable consumers;

f.  Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

g.  Whether Defendants engaged in the behavior knowingly, recklessly, or negligently;

h.  The amount of profits and revenues earned by Defendants as a result of the conduct;

i.  Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

j.  Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

76.  Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendants' wrongful conduct in violation of the law as alleged herein.

77.  Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the class. By prevailing on her own claims, Plaintiff will establish Defendants' liability to all class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to

diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

78.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

79.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff and the Class**

80.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

1    as if set forth herein.

2    81.    Defendants' actions, representations and conduct have violated, and continue to

3    violate the CLRA, because they extend to transactions that are intended to result, or which have

4    resulted, in the sale or lease of goods or services to consumers.

5    82.    Plaintiff and other class members are "consumers" as that term is defined by the

6    CLRA in California Civil Code § 1761(d).

7    83.    The Products that Plaintiff (and other similarly situated class members) purchased

8    from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

9    84.    Defendants' acts and practices, set forth in this Class Action Complaint, led

10    customers to falsely believe that the Products contained the amount of protein claimed on the

11    product package. By engaging in the actions, representations and conduct set forth in this Class

12    Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5),

13    § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code

14    §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the

15    source, sponsorship, approval, or certification of the goods they sold. In violation of California

16    Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that

17    the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or

18    quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendants'

19    acts and practices constitute improper representations that the goods it sells are of a particular

20    standard, quality, or grade, when they are of another. In violation of California Civil Code

21    §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or

22    misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant

23    has advertised goods or services with intent not to sell them as advertised. Finally, regarding

24    California Civil Code §1770(a)(8), Defendants falsely or deceptively market and advertise that,

25    unlike other protein product manufacturers, they sell Products that contain more grams of protein

26    than the Products actually contain. Further, Defendant failed to list the DRV of protein, as it was

27    required to do.

28    85.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

unlawful methods, acts and practices alleged herein pursuant to California Civil Code

§ 1780(a)(2). If Defendants are not restrained from engaging in these types of practices in the

future, Plaintiff and the other members of the Class will continue to suffer harm.

86.    Plaintiff provided Defendants with notice and demand that Defendants correct,

repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices

complained of herein. Despite receiving the aforementioned notice and demand, Defendants

failed to do so in that, among other things, it failed to identify similarly situated customers, notify

them of their right to correction, repair, replacement or other remedy, and/or to provide that

remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of

herself and those similarly situated class members, compensatory damages, punitive damages and

restitution of any ill-gotten gains due to Defendants' acts and practices.

87.    Plaintiffs also requests that this Court award their costs and reasonable attorneys'

fees pursuant to California Civil Code § 1780(d).

### PLAINTIFF'S SECOND CAUSE OF ACTION
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiff and the Class**

88.    Plaintiff realleges and incorporates by reference the paragraphs of this Class

Action Complaint as if set forth herein.

89.    Beginning at an exact date unknown to Plaintiff, but within three (3) years

preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

and/or misleading statements in connection with the advertising and marketing of the Products.

90.    Defendants made representations and statements (by omission and commission)

that led reasonable customers to believe that the Products that they were purchasing contained

more grams of protein per serving than the Products actually contained. Further, Defendants

failed to list the DRV of protein, as it was required to do.

91.    Plaintiff and those similarly situated relied to their detriment on Defendants' false,

misleading and deceptive advertising and marketing practices, including each of the

misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been

adequately informed and not intentionally deceived by Defendants, she would have acted

differently by, without limitation, refraining from purchasing Defendants' Products or paying less for them.

92.    Defendants' acts and omissions are likely to deceive the general public.

93.    Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

94.    The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

95.    As a direct and proximate result of such actions, Plaintiff and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

96.    Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon.

97.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

98.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal

redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiff and the Class**

99.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

100.    Defendants have fraudulently and deceptively informed Plaintiff that the Products contain more grams of protein than they actually contain. Further, Defendants failed to list the DRV of protein, as it was required to do.

101.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiff, and material at the time they were made. Defendants knew the composition of the Products, and knew that the Products did not contain the amount of protein represented on the label. Defendants' misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendants' Products. In misleading Plaintiff and not so informing Plaintiff, Defendants breached their duty to her. Defendants also gained financially from, and as a result of, their breach.

102.    Plaintiff and those similarly situated relied to their detriment on Defendants' misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

103.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products.

104.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' misrepresentations and omissions, and, accordingly, were damaged by Defendants.

105.    As a direct and proximate result of Defendants' misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

106.    Defendants' conduct as described herein was wilful and malicious and was designed to maximize Defendants' profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

<u>**PLAINTIFF'S FOURTH CAUSE OF ACTION**</u>
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the Class**

107.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

108.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

109.    In particular, Defendants have engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

110.    In particular, Defendants have engaged, and continue to engage, in unfair and

fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products contain more grams of protein than they actually contain; and (ii) failing to list the Protein DRV as required by FDA regulations.

111.    Plaintiff and those similarly situated relied to their detriment on Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

112.    Defendants' acts and omissions are likely to deceive the general public.

113.    Defendants engaged in these deceptive and unlawful practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

114.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

115.    As a direct and proximate result of such actions, Plaintiff and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the class members lost the amount they paid for the Products.

116.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

117.    Plaintiff seeks, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon.

118.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-

described trade practices are fraudulent, unfair, and/or unlawful.

119.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

120.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein

121.    Plaintiff and members of the Class members conferred a benefit on the Defendants by purchasing the Products

122.    Defendants have been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendants falsely represented that the Products contained specific amounts of protein per serving, when, in fact, the Products contained approximately 17% less protein than represented. This harmed Plaintiff and members of the class because they paid a price premium as a result.

123.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

124.    Plaintiff, therefore, seeks an order requiring Defendants to make restitution to her

1  and other members of the Class

2  **PRAYER FOR RELIEF**

3        WHEREFORE, Plaintiff, on behalf of herself and those similarly situated,

4  respectfully request that the Court enter judgement against Defendants as follows:

5       A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as

6           class counsel;

7       B.    An order temporarily and permanently enjoining Defendants from continuing the

8           unlawful, deceptive, fraudulent, and unfair business practices alleged in this Com-

9           plaint;

10      C.    An award of compensatory damages in an amount to be determined at trial;

11      D.    An award of statutory damages in an amount to be determined at trial;

12      E.    An award of punitive damages in an amount to be determined at trial;

13      F.    An award of treble damages;

14      G.    An award of restitution in an amount to be determined at trial;

15      H.    An order requiring Defendants to pay both pre- and post-judgment interest on any

16           amounts awarded;

17      I.    For reasonable attorney's fees and the costs of suit incurred; and

18      J.    For such further relief as this Court may deem just and proper.

19  **JURY TRIAL DEMANDED**

20        Plaintiff hereby demands a trial by jury.

21  Dated: April 28, 2020          **GUTRIDE SAFIER LLP**

22                      /s Seth A. Safier

23                      Adam J. Gutride, Esq.
                        Seth A. Safier, Esq.

24                      Marie McCrary, Esq.
                        Hayley Reynolds, Esq.

25                      100 Pine Street, Suite 1250
                        San Francisco, CA 94111

26

27

28

-27-

Exhibit A

## EXHIBIT A

I, Sherris Minor, declare:

1.    I am the Plaintiff in this action.  If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.    I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.    As set forth in my complaint, over the last four years, I purchased a number of Kodiak Cakes Mixes from Target, Safeway, and Sprouts stores in Pleasant Hill, California; Emoryville, California; and Oakland, California.

4.    I later learned that the Kodiak Cake Mixes I purchased did not contain the amount of protein represented on the label.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 28th day of April 2020, in Oakland, California.



Sherris Minor