UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRIS MINOR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BAKER MILLS, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-02901-RS (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 60, 61 |

Before the Court is defendants Kodiak Cakes, LLC and Baker Mills, Inc. (collectively, "Kodiak") and plaintiff's joint discovery dispute letter concerning three sets of discovery—Kodiak's requests for production ("RFPs"), Kodiak's interrogatories, and plaintiff's RFPs. Dkt. 60. Also pending is plaintiff's motion to quash Kodiak's subpoenas to six nonparties. Dkt. 61. The Court held a discovery hearing on these disputes on June 25, 2021, and now rules as follows.

**A.   Joint Discovery Letter**

　　　　**1.　　Kodiak's RFP Nos. 27, 28, 37**

In the three RFPs at issue, Kodiak asks plaintiff to produce all documents that concern her consumption of high protein foods (RFP No. 27); that identify any other product she purchased on the basis that the product is high in protein, including product labels, packaging, and receipts (RFP No. 28); and that relate to the foods/drinks she consumes (RFP No. 37). Dkt. 60 at 2.[1] Kodiak asserts that the requested documents go to "the merits/certification, materiality, reliance,

---

[1] The parties' joint letter attached excerpts of the specific Kodiak RFPs and interrogatories at issue but omitted the definitions that accompanied those discovery requests. *See* Dkt. 60, Exs. 1 & 2. Kodiak submitted the missing definitions after the June 25 hearing at the Court's request. *See* Dkts. 69, 70.

knowledge, habits, and credibility," and argues that plaintiff "put her eating habits directly at issue" by alleging that she "was attracted to the [Kodiak] Products because, when given a choice, she prefers to buy quick and easy breakfast items that support her active physical fitness levels and high protein diet." *Id.* (citing Dkt. 45, FAC ¶ 66). Kodiak asserts it "is entitled to test the veracity of these allegations" and claims that it "is looking for a *representative sampling* of food receipts" so it can determine plaintiff's eating and food purchasing habits and probe whether she was in fact misled or cared about protein. *Id.* (emphasis in original).

Plaintiff does not dispute that documents concerning her purchases of the Kodiak products at issue in this action are relevant and must be produced if within her possession, custody, or control.[2] Nor is there any dispute that Kodiak is entitled to test the veracity of plaintiff's alleged reliance on Kodiak's protein labeling representations. However, plaintiff argues, and the Court agrees, that Kodiak's "attempts to seek evidence of every food purchase and dietary habit of her lifetime is harassing, and not proportional to the needs of the case." *Id.* at 4–5. At the hearing, Kodiak reported that it has agreed to narrow its document requests to the time period of 2015 to the present, and stated that it is only interested in plaintiff's purchases and consumption of foods and drinks that have some nexus to protein. But even as narrowed, Kodiak's RFPs still require plaintiff to sort, inventory, and produce all labels, packaging, and receipts for *all* foods and drinks containing protein that plaintiff has consumed and/or purchased since 2015 (and as Kodiak acknowledges, "[m]ost food products have protein," *id.* at 2). The Court finds that the burden of this proposed discovery outweighs its likely benefit. To the extent such information is relevant to this case, "the less burdensome means of discovering the same basic information is to question Plaintiff[] about these issues at [her] deposition." *In re Coca-Cola Prod. Mktg. & Sales Pracs. Litig. (No. II)*, 2015 WL 5043846, at *5 (N.D. Cal. Aug. 26, 2015) (James, M.J.).

\\

\\

---

[2] Plaintiff represented at the discovery hearing that she does not have any receipts or other documentary proof of purchase for the Kodiak products she alleges she bought.

2

**2. Kodiak's Interrogatory Nos. 1, 6, 9, 11–13, 15–19**

Interrogatory No. 1 asks plaintiff to state all "product purchase details" for each Kodiak product at issue in this action that she purchased in her lifetime.[3] As discussed during the hearing, this interrogatory is undeniably overbroad as to time frame. Accordingly, the Court limits the relevant time frame to the proposed class period—April 9, 2016 to the present. Plaintiff's current response identifies the types of Kodiak products she purchased (blueberry muffin cups, buttermilk flapjack and waffle mix, and blueberry muffin mix), but it does not provide any other "product purchase details" as requested. Plaintiff must provide those details to the extent they are known or reasonably available to her; referring Kodiak to allegations in her complaint is not sufficient.

For Interrogatory Nos. 6, 12, 13, and 15, plaintiff's existing responses are sufficient.

Interrogatory No. 9 asks plaintiff to state the basis for her belief that she was not getting enough protein from Kodiak products "in the time period before [she] met her counsel," and Interrogatory No. 11 asks her to state all facts explaining how her consumption of Kodiak products prevented her "from maintaining 'active physical fitness levels' as stated in paragraph 66 of the [FAC]." The Court limits the relevant time frame to the proposed class period and directs plaintiff to answer these interrogatories.

For Interrogatory Nos. 16 and 18, the Court agrees with plaintiff that these requests are overbroad and unduly burdensome. To the extent the requested information is relevant, Kodiak may obtain it through questioning plaintiff at her deposition.

Interrogatory No. 17 asks plaintiff to state all facts why she "cannot rely [on] or trust the nitrogen method for testing protein content that is used to calculate the amount of protein in the foods/drinks that [she] consume[s]." Interrogatory No. 19 asks her to state all facts explaining

---

[3] Kodiak's interrogatories define "product purchase details" as "(1) all purchase date or dates, (2) all PRODUCT purchase locations (including the name of the store and address) or name of the websites, (3) all the names of any other person accompanying the Plaintiff when he or she purchased if at a physical store location, (4) all the methods of purchase (cash, credit, debit, etc.), (5) whether a loyalty card or loyalty program was scanned during the purchase such as scanning a Ralph's Rewards Card or Vons Club Card and what loyalty card was scanned for each purchase, (6) all the specific PRODUCT or PRODUCTS purchased, and (7) the amount paid for the PRODUCT or PRODUCTS purchased for each purchase." Dkt. 69 at 4.

3

why the Kodiak products at issue contain an inaccurate quantity of protein. These contention interrogatories seek relevant information and plaintiff must answer them to the fullest extent possible.

Plaintiff must amend her interrogatory responses as set forth above within 14 days.

### 3. Plaintiff's First Set of RFPs

Plaintiff states that Kodiak is withholding hundreds of responsive documents on the basis that they contain consumer email addresses which require redaction or an opt-out notice to affected consumers prior to production. Kodiak is ordered to redact the email addresses and produce the responsive documents within 14 days.

## B. Plaintiff's Motion to Quash Nonparty Subpoenas

Plaintiff moves to quash document subpoenas served by Kodiak on six nonparties: Safeway, and food delivery services Amazon, Grubhub, Doordash, Maplebear d/b/a Instacart, and Uber Technologies. Dkt. 61. The Safeway subpoena requests (1) documents identifying the "specific products Sherris Minor (Safeway rewards number [***] and/or [***]) purchased at Safeway for the period 1/1/2015 through 4/1/2021," and (2) documents showing her receipts from Safeway during the same time period. Dkt. 61-1, Ex. A. Kodiak's subpoenas to the food delivery services request (1) documents identifying "the specific food products Sherris Minor of California ordered or purchased through you or any of your subsidiaries for the period of 1/1/2015 through 4/1/2021," and (2) documents showing food purchase receipts during the same time period. *Id.*, Exs. B–F. Kodiak argues that plaintiff has not provided any receipts or "substantive information on her food purchases of any Kodiak products," and so it was "forced to subpoena various food companies to gather this evidence." Dkt. 65 at 5.

*Safeway subpoena*. Safeway is the only subpoenaed nonparty from which plaintiff alleges to have purchased Kodiak products. *See* FAC ¶ 64 ("Plaintiff has purchased muffin cups and at least ten of Defendants' Kodiak Cakes flapjack and muffin mixes from various Sprouts Farmers Market, Target, and Safeway stores throughout the East Bay in Northern California over the past year."). While plaintiff agrees that Safeway records reflecting her purchases of Kodiak products are relevant, she contends that the Safeway subpoena—requesting her entire Safeway purchase

4

history of all food and non-food items over a six-year period—is harassing, invasive, and seeks irrelevant information. During the hearing, plaintiff proposed a compromise whereby she would subpoena Safeway herself (in lieu of Kodiak) and then produce to Kodiak the subpoenaed Safeway records in redacted form, showing only her purchases of Kodiak products. Kodiak did not object to this proposal, and the Court finds plaintiff's alternative course of action to be an acceptable compromise. Accordingly, the Court grants plaintiff's motion to quash Kodiak's subpoena to Safeway, and orders plaintiff to subpoena Safeway by **July 23, 2021**. Plaintiff must simultaneously provide Kodiak with a copy of the Safeway subpoena and, within seven days of receiving the requested records from Safeway, plaintiff must produce to Kodiak all documents reflecting her purchases of Kodiak products during the class period, if such documents exist. Plaintiff may redact any portions of those documents that reflect her purchases of non-Kodiak products.

*Food Delivery Service subpoenas.* Plaintiff's motion to quash Kodiak's subpoenas to Amazon, Grubhub, Doordash, Maplebear, and Uber—which she challenges on relevance, proportionality, and privacy grounds—is also granted. As plaintiff emphasized in her briefing and reiterated during the hearing, she does not allege she *ever used* the subpoenaed food delivery services for any purpose, let alone to purchase Kodiak products.[4] *See* Dkt. 61 at 7; Dkt. 66 at 8. Kodiak made no effort to refute (or even address) these assertions, and the Court is not persuaded that the delivery service subpoenas seek relevant information that is proportional to the needs of the case.

**IT IS SO ORDERED.**

Dated: July 14, 2021

ALEX G. TSE
United States Magistrate Judge

---

[4] Tellingly, Kodiak's subpoena cover letter to Safeway states that "plaintiff Sherris Minor shops at Safeway and has bought Kodiak Cakes products from Safeway," Dkt. 61-1, Ex. A, whereas Kodiak's cover letters to the subpoenaed food delivery services speculate that plaintiff "*may have* bought Kodiak Cakes products" from them, *id.*, Exs. B–F (emphasis added).

5