**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Matthew T. McCrary (admitted pro hac vice)
  matt@gutridesafier.com
4450 Arapahoe Ave., Suite 100
Boulder, CO 80303
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469
www.gutridesafier.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| SHERRIS MINOR, as an individual, on behalf of herself, the general public and those similarly situated,<br><br>                Plaintiff,<br><br>   v.<br><br>BAKER MILLS, INC.; and KODIAK CAKES, LLC,<br><br>                Defendants. | CASE NO. 20-cv-02901-RS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>NO HEARING REQUESTED PURSUANT TO ECF 110<br><br>HONORABLE JUDGE SEEBORG |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ..................................................................................................3

    A.    Regulatory Preemption Framework..................................................3

    B.    Procedural Background......................................................................4

III.   ARGUMENT ......................................................................................................5

    C.    Plaintiff's Claims Are Currently Pled...............................................5

    D.    Plaintiff's Claims Are Not Impliedly Preempted.............................6

        1.    *Chong* misapplied *Buckman*. ..................................................9

        2.    The presumption against preemption weighs in Plaintiff's favor...........11

    E.    Plaintiff's Claims Are Not Expressly Preempted. ...............................14

        1.    FDA regulations do not expressly permit front label claims without %DV for protein in the NFP.....................................14

        2.    FDA regulations do not expressly permit using an incorrect nitrogen method for front label protein quantity claims. ........................15

        3.    FDA regulations do not expressly permit using nitrogen method on front label...........................................................16

    F.    Protein Claims are Nutrient Content Claims. ....................................21

    G.    Plaintiff has Standing to Assert the No %DV Claims. ......................23

IV.   CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Borchenko v. L'Oreal USA, Inc.*,
   389 F. Supp. 3d 769 (C.D. Cal. 2019) ..................................................................... 10

*Buckman v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001) ................................................................................... passim

*Chong v. Kind*,
   No. 21-cv-04528-RS, 2022 U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022) ............. passim

*Clancy v. Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013) ...................................................................... 7, 9

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ............................................................................ 20

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*,
   520 U.S. 806 (1997) ....................................................................................... 12

*De Keczer v. Tetley USA, Inc.*,
   No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465 (N.D. Cal. Aug. 28, 2014) ............. 8

*Fernandez v. Atkins Nutritionals, Inc.*,
   No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 78607 (S.D. Cal. May 9, 2018) ...... 22

*Florida Lime & Avocado Growers v. Paul*,
   373 U.S. 132 (1963) ....................................................................................... 12

*Friends of the Santa Clara River v. United States Army Corps of Eng'rs*,
   887 F.3d 906 (9th Cir. 2018) ............................................................................ 18

*Gaeta v. Perrigo Pharmaceuticals Co.*,
   630 F. 3d 1225 (9th Cir. 2011) ........................................................................... 7

*Gubala v. HBS Int'l Corp.*,
   2016 U.S. Dist. LEXIS 58988 (N.D. Ill. May 4, 2016) ............................................. 22

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ................................................................. 8

*Hawkins v. Kroger Co.*,
   906 F.3d 763 (9th Cir. 2018) ...................................................................... 18, 21

*Hendricks v. StarKist Co.*,
   30 F. Supp. 3d 917 (N.D. Cal. 2014) ............................................................... 8, 13

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008) ................................................................................. 13

*In re Trader Joe's Tuna Litig.*,
   289 F. Supp. 3d 1074 (C.D. Cal. Oct. 3, 2017) ............................................... 2, 8, 9

*Jones v. Medtronic, Inc.*,
   745 F. App'x 714 (9th Cir. 2018) ....................................................................... 11

*McClellan v. I-Flow Corp.*,
   776 F.3d 1035 (9th Cir. 2015) ................................................................................ 7

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ........................................................................................ 12

*Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*,
   898 F.2d 753 (9th Cir. 1990) ............................................................................. 18

*Morgan v. Wallaby Yogurt Co.*,
   No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4, 2013) ................. 8

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009) .............................................................................. 22

*Perez v. Nidek Co.*,
   711 F.3d 1109 (9th Cir. 2013) ............................................................................. 7

*Plumley v. Massachusetts*,
   155 U.S. 461 (1894) .................................................................................... 8, 13

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ............................................................................. 23

*Red v. Kroger Co.*,
   No. CV 10-01025 DMG (MANx), 2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sep. 2, 2010) 22

*Reid v. Johnson & Johnson*,
   780 F.3d 952 (9th Cir. 2015) ......................................................................... 16, 22

*Ross v. Clover Stornetta Farms*,
   No. C -13-01517 EDL, 2014 U.S. Dist. LEXIS 5408 (N.D. Cal. Jan. 14, 2014) ...................... 8

*Samet v. P&G*,
   No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013) ......... 9, 14

*Sciortino v. PepsiCo, Inc.*,
   108 F. Supp. 3d 780 (N.D. Cal. 2015) ..................................................................... 8

*Somers v. Beiersdorf, Inc.*,
   467 F. Supp. 3d 934 (S.D. Cal. 2020) .................................................................... 10

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) ................................................................. 7, 8, 11, 12

*Swearingen v. Amazon Pres. Partners, Inc.*,
   2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014) ............................................. 23

*Swearingen v. Santa Cruz Nat., Inc.*,
   No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 (N.D. Cal. Aug. 17, 2016) ..................... 9

*Trazo v. Nestlé USA, Inc.*,
   No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9, 2013) ............ 7, 9

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
   No. CV 11 - 9495 PSG (JCGx), 2013 U.S. Dist. LEXIS 72683 (C.D. Cal. May 9, 2013) ...... 21

*Vassigh v. Bai Brands LLC*,
   No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. July 13, 2015) ........... passim

*Werdebaugh v. Blue Diamond Growers*,
  No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2, 2013) .................. 8

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ...................................................................................................... 13

**Statutes**

21 U.S.C. § 337(a) ...................................................................................................... 4, 7

21 U.S.C. § 343(r) .......................................................................................................... 25

21 U.S.C. § 343-1(a)(4) ............................................................................................... 4, 7

**Other Authorities**

HR Rep 101-538 (June 13, 1990) ..................................................................................... 4

**Regulations**

21 C.F.R. § 101.13(c) ...................................................................................................... 24

21 C.F.R. § 101.13(i) ....................................................................................................... 25

21 C.F.R. § 101.13(i)(3) ................................................................................................... 19

21 C.F.R. § 101.9(c)(7) .................................................................................................... 18

56 Fed. Reg. 60366 .......................................................................................................... 22

56 Fed. Reg. 60421 .......................................................................................................... 19

56 Fed. Reg. 60426 .......................................................................................................... 19

58 Fed. Reg. 2079 ...................................................................................................... passim

58 Fed. Reg. 2102 ............................................................................................................ 20

58 Fed. Reg. 2302 ............................................................................................................ 25

58 Fed. Reg. 2303 ............................................................................................................ 25

58 Fed. Reg. 2304 ............................................................................................................ 25

Cal. Health & Safety Code, § 110100 ................................................................................ 4

Cal. Health & Safety Code, § 110765 ................................................................................ 4

## I.  INTRODUCTION

In *Chong v. Kind*, No. 21-cv-04528-RS, 2022 U.S. Dist. LEXIS 27438 (N.D. Cal. Feb. 15, 2022) ("*Chong*"), this Court held that certain claims similar to those at issue in this case were preempted. The Court then invited the parties in this case to brief how to proceed in light of the *Chong* order. *Chong* has two essential holdings. The first rejected the express preemption analysis from the Court's order on the first motion to dismiss in this case and dismissed claims that the defendant's front label protein quantity representations were misleading because they did not account for the products' poor protein quality. The second held that UCL unlawful prong claims based on violations of California's Sherman Law were impliedly preempted in light of the Supreme Court's decision in *Buckman v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001). Defendants here argue that the Court can simply dismiss all claims in this case based on *Chong*, but it is not that straightforward for at least two reasons.

First, Plaintiff has a literal falsity claim at issue here that was not present and therefore was not analyzed in *Chong* and to which the express preemption holding cannot apply. Plaintiff learned during discovery that the Defendants here are calculating protein quantity incorrectly using the nitrogen method, which leads to an objectively inflated quantitative claim. *Chong* dismissed as expressly preempted a claim that the front label was misleading for failure to account for the protein's digestibility because it determined that the regulations permit stating "grams of protein even outside the NFP calculated by the nitrogen method, and without adjustment for digestibility." 2022 U.S. Dist. LEXIS 27438 at *9. Implicit in that holding is that the correct, FDA mandated nitrogen conversion factor for the particular protein source in the product is used. Here, Plaintiff alleges that Defendants are not using the correct FDA mandated nitrogen conversion factor. Defendants argue that this claim does not adequately appear on the pleadings, but, as explained below, Plaintiff has always alleged that Defendants' protein claims were literally false because the products did not contain as much protein as advertised. Plaintiff simply learned new evidence during discovery to support that already-pled claim, which regularly happens in litigation. Regardless, the question is academic because Plaintiff has simultaneously moved for

leave to amend to add these facts into the Complaint, and the case should proceed, at a minimum, on this basis.[1]

Second, just as the defendant in *Chong* asked this Court to take a "fresh look" at its express preemption ruling from this case, which the Court did, Plaintiff here asks the Court to take a fresh look at the implied preemption ruling from *Chong*. The briefing in *Chong* focused heavily on express rather than implied preemption, and the simple fact is that "courts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675, at *12–13 (N.D. Cal. July 13, 2015). Indeed, as detailed below, **_every other judge in this District_** to consider the issue has held that *Buckman* does not impliedly preempt UCL unlawful prong claims predicated on violations of California's Sherman Law. The reasoning is straight forward. The FDCA expressly permits states to adopt food labeling requirements that are identical to those in the federal scheme, and to give a private right of action to enforce those parallel state requirements in court. California has done just that.

*Chong* determined that claims under the Sherman Law are impliedly preempted because the Sherman Law "is entirely dependent upon the FDCA in that it expressly adopts the FDCA and regulations as state law." 2022 U.S. Dist. LEXIS 27438 at *10. But the fact the Sherman Law incorporates the FDCA by reference is not because the FDCA is California's source of its authority to enact the Sherman Law, but simply from a "consideration of practicalities." *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1084–85 (C.D. Cal. Oct. 3, 2017). Otherwise, to avoid express preemption, California would have to re-write its food labeling regulations every time the FDA made any changes to ensure that the state requirements remained identical to the federal ones. Regardless, the state's authority to enact the parallel requirements stems not from the FDCA, but from its traditional, historic police power to regulate food labels, which long

---

[1] Plaintiff respectfully disagrees with the Court's express preemption ruling in *Chong* as it applies to the theory that the front label is misleading due to the products' poor protein quality, but understands that the Court has now considered the issue twice. Plaintiff nevertheless includes arguments explaining the basis of her disagreement, at a minimum, to preserve those arguments for purposes of any eventual appeal.

predates the FDCA. That is a stark contrast to *Buckman*, which involved a state law claim seeking to enforce violations of the FDCA that amounted to "fraud-on-the-FDA" itself. Without the FDCA there could be no fraud on the agency in *Buckman* and no state claim at all.

Defendants' remaining arguments fare no better. This Court has already rejected Defendants' argument that a quantitative protein claim is not a nutrient content claim. ECF 35 at 4; ECF 62 at 3. Indeed, the FDA regulations compel this result. And finally, Plaintiff has standing to bring her unlawfulness claim based on the lack of %DV because, at a minimum, the lack of %DV for protein in the NFP rendered the *front label claim unlawful*. Plaintiff alleges that she relied on the unlawful front label claim, and paid a price premium for the products. Therefore, she was injured and has standing. Plaintiff requests this Court deny Defendants' motion for judgment on the pleadings.

## II. BACKGROUND

### A. Regulatory Preemption Framework

The Food Drug and Cosmetic Act ("FDCA") is a sweeping regulatory scheme that governs food, drugs, cosmetics, and medical devices. Each product is regulated differently within the FDCA. For example, medical devices are regulated under the Medical Device Amendments ("MDA"), and food is regulated under the Nutrition Labeling & Education Act ("NLEA").

The FDCA contains a provision that the Supreme Court has interpreted as giving rise to implied preemption, 21 U.S.C. § 337(a): "[e]xcept as provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." The effect of this provision is that there is no federal private right of action to enforce the FDCA.

Congress passed the Nutrition Labeling and Education Act of 1990 ("NLEA") amending the FDCA to prescribe national uniform nutrition labeling for foods. HR Rep 101-538 (June 13, 1990). The NLEA included an explicit preemption provision codified as section 343-1(a):

> no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce -- * * * any requirement for the labeling of food of the type required by [section 343(b)-(f), (h), (i)(1)-(2), or (k) of the FDCA] that is not identical to the requirement of such section * * *.

21 U.S.C. § 343-1(a)(4).

In passing this preemption provision, Congress intentionally left the door open to state enforcement of food labeling regulations that paralleled federal regulations. 136 Cong. Rec. 1539 (daily ed. July 30, 1990).

Like the FDCA, California's Sherman Law broadly prohibits the misbranding of food. Cal. Health & Safety Code, § 110765. Among various examples of what constitutes misbranded food, the Sherman Law uses language "identical to" section 343(r) to provide that "[a]ny food is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 110660. Additionally, the Sherman Law incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]" as "the food labeling regulations of this state." Cal. Health & Safety Code, § 110100. Thus, California has adopted as its own requirements regarding both front labeling and the Nutrition Facts Panel ("NFP").

### B.  Procedural Background

Plaintiff filed her original complaint on April 28, 2020. ECF 1. In it, she alleged Defendants' front label protein claims are false, misleading, and unlawful. *See*, *e.g.*, ECF 1 ¶¶ 24, 45, 47, 59, 84, 94, 109. Based on Defendants' conduct, Plaintiff brought claims under California consumer protection statutes (CLRA, UCL, and FAL) and common law claims for fraud and unjust enrichment. ECF 1 ¶¶ 80-124. In part, Plaintiff alleges that Defendants violated the Sherman Law, which incorporates NLEA regulations, giving rise to her UCL-unlawfulness claim. Plaintiff's remaining claims relate to the misleading nature of Defendants' front label protein claims.

Plaintiff has always alleged that the front label protein claim is false because it overstates the actual protein quantity by approximately 2.5 grams. *See*, *e.g.*, ECF 1 ¶ 4; ECF 45 ¶ 4. In her First Amended Complaint, Plaintiff also alleged the front label claim is misleading because it does not account for protein quality, and has offered PDCAAS as an appropriate measure of protein that would properly account for quality. *See*, *e.g.*, ECF 45 ¶¶ 5, 20, 30–33. Plaintiff also alleged the front label claim is unlawful by virtue of a requirement in the FDA regulations and

parallel, identical California regulations that prohibit a front label claim in the absence of a %DV in the NFP. *See*, *e.g.*, ECF 1 ¶¶ 5, 44, 46; ECF 45 ¶ 44.

During discovery, Plaintiff learned that the reason for the 2.5 gram difference between Plaintiff's testing of the Products and Defendants' nitrogen testing was that Defendants were using the wrong nitrogen conversion factor. Plaintiff also learned that when calculated correctly, the nitrogen method reveals only 12 grams of protein in, for example, the Buttermilk Flapjacks & Waffles Product. When Plaintiff moved for class certification on the literal falsity claim, she relied on this nitrogen theory evidence. *See* ECF 75 at 1-2, 10-11; ECF 94 at 13-14.

## III. ARGUMENT

### C. Plaintiff's Claims Are Currently Pled.

Defendants argue that "Plaintiff cannot avoid dismissal of the FAC through new facts or theories she may present in her opposition to this motion." ECF 114 at 14. However, none of Plaintiff's theories are new. Plaintiff's position has always been that all theories she is currently pursuing are currently pled. *See* ECF 94 at 13–14 (Plaintiff's reply in support of class certification explaining theories of the case); *id*. at 9 (applying damages model to theory that "absence of a %DV in the presence of a front label protein claim is unlawful" and "removing the front label claim would cure the unlawfulness").[2] Plaintiff's legal theory remains exactly the same, i.e., there is not 14 grams of protein quantity in Kodiak Cakes' pancake mix. When Plaintiff first filed suit, she alleged that amino acid content testing, which is more accurate than the nitrogen method at quantifying protein, showed there was only 11.5 grams of protein in the product. ECF 1 at ¶ 4. Kodiak always asserted that its 14-gram quantity figure was accurate under the nitrogen method and Plaintiff attributed the discrepancy to the accuracy of each methodology. *See* ECF 47 at 1. As it turns out, however, Kodiak's assertion about the nitrogen method was false. Kodiak produced documents in discovery revealing that it has been applying a generic 6.25 nitrogen-to-protein conversion factor to its Products, even though wheat (the primary ingredient in the Kodiak Cake

---

[2] Given the procedural background of this case, the parties are proceeding on dual tracks without the benefit of Court's ruling on the previously-argued motions addressing this issue. Thus, to the extent the Court agrees that the theories are not currently pled, Plaintiff has filed a motion for leave to amend to clarify the allegations.

products) is subject to a 5.7 conversion factor. When Defendants' nitrogen conversion is adjusted to the correct factor, the protein content drops to 12 grams, not-coincidently very close to the original amino acid content testing of 11.5 grams. The new evidence that Defendants have been using the wrong nitrogen factor does not change the fact that Plaintiff's theory remains unchanged: Defendants' front label protein claim is literally false.

Similarly, Plaintiff has consistently alleged that the absence of a %DV for protein in the NFP renders the Products' labeling unlawful. *See* ECF 1 at ¶¶ 5, 23, 46; ECF 45 at ¶¶ 6, 19, 44. The absence of a %DV is not itself unlawful. Only the absence of a %DV in the *presence of a front label protein claim* is unlawful. Because Defendants' products uniformly failed to include a %DV on the back, it was unlawful for any product to have *any* protein claim *on the front*. Plaintiff has always alleged she relied on the front label claim in her purchases and that she paid a price premium. *See* ECF 1 at ¶¶66, 111; ECF 45 at ¶¶ 65-69. Thus, the theory remains unchanged.

Regardless, even if the Court finds the claims are not currently pled in Plaintiff's First Amended Complaint, Plaintiff has sought leave to amend to do so. ECF 113.

### D. Plaintiff's Claims Are Not Impliedly Preempted.

In *Chong*, this Court held that claims relating to the failure to include a %DV for protein in the NFP were impliedly preempted under *Buckman*. 2022 U.S. Dist. LEXIS 27438, *9-10. The parties in *Chong* focused their briefing on express, not implied, preemption, which perhaps explains the limited analysis the Court offered in *Chong* about why *Buckman* should apply to claims brought under the Sherman Law in the food labeling context. Plaintiff respectfully requests that the Court take a "fresh look" at this issue because "courts in this District . . . routinely reject the argument that the Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *12–13. In fact, as detailed below, ***every other judge in this District*** to consider the issue has held that *Buckman* does not impliedly preempt UCL unlawful prong claims predicated on violations of the Sherman Law. These decisions are well founded.

The FDCA *expressly* preempts any state law claim that is "not identical" to the federal food labeling scheme. 21 U.S.C. § 343-1(a)(4). The FDCA also provides that "all proceedings for

the enforcement or to restrain violations of [the Act] shall be by and in the name of the United States," 21 U.S.C. § 337(a), which the Supreme Court in *Buckman* held *impliedly* preempts any federal claims seeking to privately enforce FDA regulations where a state law corollary does not exist. 531 U.S. at 348, & n.4. This is what creates the "narrow gap" of non-preempted claims that this Court referenced in *Chong.* 2022 U.S. Dist. LEXIS 27438, at *10. The Ninth Circuit has described that gap as follows: "The Plaintiff must be suing for conduct the *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

As the Ninth Circuit has also long-recognized, "*Buckman* . . . left the door open to state-law claims 'parallel to federal requirements.'" *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015); *see also Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (state law claim is not preempted where it "rests on a state-law duty that parallels a federal-law duty under the [FDCA]"); *Gaeta v. Perrigo Pharmaceuticals Co.*, 630 F. 3d 1225 (9th Cir. 2011) (finding that claims were "not preempted under *Buckman*" "[b]ecause these claims are based on Perrigo's alleged violation of its state-law duties rather than an alleged violation of the FDCA itself"). In other words, "[s]tates are generally free to enact statutes that parallel the requirements of federal law and to provide for private enforcement of those parallel obligations." *Vassigh*, 2015 U.S. Dist. LEXIS 90675 at *14 (citing *Stengel*, 704 F.3d at 1233); *see Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Congress specifically anticipated states enacting their own identical laws.").

"That is exactly what California has chosen to do with respect to the federal food labeling requirements at issue here. The Sherman law expressly adopts the requirements of the FDCA as obligations under California law, and California law further provides a mechanism for private parties to enforce those obligations through the 'unlawful' prong of the UCL." *Vassigh*, 2015 U.S. Dist. LEXIS 90675 at *14 (internal citations omitted); *see also Trazo v. Nestlé USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534, at *20–21 (N.D. Cal. Aug. 9, 2013) ("The FDCA therefore does not preclude states from adopting their own parallel laws and adopting a

different mechanism for enforcing those laws. California chose to exercise this right by enacting the Sherman Law and allowing private plaintiffs to enforce that law through the UCL."); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1084 (C.D. Cal. 2017) ("The Ninth Circuit has held that states may provide its citizens a private right of action even where the federal scheme does not, which is what California has done here.") (citing *Stengel*, 704 F.3d at 1233). A state's authority to adopt food regulations that are identical to those in the federal regulations stems from the state's "historic police powers" to regulate food labeling, which long-predates the enactment of the FDCA. *See Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which . . . it is the protection of the people against fraud and deception in the sale of food products.").

Accordingly, unlawful prong UCL claims predicated on violations of the Sherman Law pass through the "narrow gap" of non-preemption. Since the standards are identical, the conduct about which the plaintiff sues necessarily violates the FDCA and are therefore not expressly preempted. Nevertheless, "the plaintiffs are not suing because the conduct violates the FDCA . . . . they are suing because [the Defendants'] conduct allegedly violates the Sherman Law, which mirrors the FDCA." *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959, at *23 (N.D. Cal. Oct. 4, 2013). For these reasons, every other judge in this District to consider the argument has held that UCL unlawful prong claims based on violations of the Sherman Law are ***not impliedly preempted*** by the FDCA or *Buckman*. *De Keczer v. Tetley USA, Inc*., No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465, at *16–17 (N.D. Cal. Aug. 28, 2014) (Davila, J.); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 926 (N.D. Cal. 2014) (Gonzalez Rogers, J.); *Ross v. Clover Stornetta Farms*, No. C -13-01517 EDL, 2014 U.S. Dist. LEXIS 5408, at *27–28 (N.D. Cal. Jan. 14, 2014) (Laporte, J.); *Morgan v. Wallaby Yogurt Co*., No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959, at *21–22 (N.D. Cal. Oct. 4, 2013) (Orrick, J.); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178, at *24–27 (N.D. Cal. Oct. 2, 2013) (Koh, J.); *Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100, 1117 (N.D. Cal. 2013) (Koh, J.); *Sciortino v. PepsiCo, Inc*., 108 F. Supp.

3d 780, 807–08 (N.D. Cal. 2015) (Chen, J.); *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *12–16 (Gilliam, J.);[3] *Swearingen v. Santa Cruz Nat., Inc*., No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432, at *20 (N.D. Cal. Aug. 17, 2016) (Illston, J.); *Clancy v. Bromley Tea Co*., 308 F.R.D. 564, 575 (N.D. Cal. 2013) (Tigar, J.); *Trazo*, 2013 U.S. Dist. LEXIS 113534, at *20–21 (Grewal, J.); *Samet v. P&G*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, at *23–24 (N.D. Cal. June 18, 2013) (Grewal, J.).

        *1.*    *Chong misapplied Buckman.*

In *Chong*, this Court held that Plaintiff's claims alleging violations of the Sherman Law were impliedly preempted under *Buckman* because the Sherman law "is entirely dependent upon the FDCA in that it expressly adopts the FDCA and regulations as state law." 2022 U.S. Dist. LEXIS 27438, at *10. However, the fact that the Sherman Law incorporates the FDA regulations by reference does not make the claim depend upon federal law. Instead, the fact that the Sherman Law "incorporates the FDCA requirements by reference . . . results from consideration of practicalities." *In re Trader Joe's Tuna Litig*., 289 F. Supp. 3d at 1084–85. "If California were required to update its statutes every time the federal government changed a standard, it would constantly have statutes stating standards that did not mirror the federal scheme, which would then be expressly preempted by Section 343-1(a)." *Id*. Nevertheless, the underlying authority on which the Sherman Law depends is still the state's historic police powers to regulate labels—not the FDCA. If the federal regulations did not exist, California could still have the exact same food labeling scheme it does now—it would simply have to write all those regulations out word for word, rather than incorporate by reference the words stated in the federal regulations. *See Clancy*, 308 F.R.D. at 574 ("The Sherman Law . . . exists independently of [the FDCA], and violating its requirements would be a valid state cause of action even if the FDA ceased to exist."). But, as Judge Gilliam aptly noted, there is no reason to treat "listing out each individual requirement of the statute line-by-line" any "differently than incorporated language," which is nothing more than

---

[3] Judge Gilliam again reached the conclusion that *Buckman* does not stand for preemption of state law claims based on California's Sherman law on facts nearly identical to those in both *Chong* and here. *Brown v. Nature's Path Foods, Inc*., No. 21-cv-5132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal., Mar. 10, 20220).

a "legislative space saving technique." *Vassigh,* 2015 U.S. Dist. LEXIS 90675, at *12–16. Either way, the state's authority to regulate labels remains the same and in no way derives from the FDCA itself.

*Buckman* bears out this critical distinction. The plaintiff in *Buckman* sued based on alleged misrepresentations that a medical device consultant made to the FDA in the premarket approval process for a medical device that allegedly injured plaintiff. 531 U.S. at 343–44. The plaintiff relied on a provision of the FDCA, the Medical Device Amendments ("MDA"), that requires medical device manufacturers to receive premarket approval for their devices and creates duties to disclose particular facts to the FDA, during which the defendant allegedly made misrepresentations. *Id.* at 344–47. The plaintiff argued that "but for" this fraud on the FDA, the devices would not have received approval, and would not have been used for an off-label purpose that ultimately injured plaintiffs. *Id.* at 343. Critically, that "fraud-on-the-FDA" claim ***did depend*** entirely upon the existence of the federal regulatory scheme at issue. Were there no FDCA or FDA, the plaintiff's claim in that case ***could not have existed*** because there could be no "fraud-on-the-FDA" claims under state law. As a result, almost all cases finding preemption under *Buckman* do so in the context of claims relating to the pre-market approval process. *See*, *e.g.*, *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 937 (S.D. Cal. 2020) ("Plaintiff does not raise any separate or distinct state law drug process that should have been followed; she refers only to the FDA NDA [premarket approval] process."); *id.* ("although food labeling is undoubtedly 'within the states' historic police powers,' the same cannot be said for new drug approval, a process that is uniquely federal.") (internal citations omitted); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 773 (C.D. Cal. 2019) (finding preemption where plaintiff argued that a cosmetic was a drug that had not undergone necessary FDA premarket approval).

By contrast here, Plaintiff's claims do not involve fraud on the FDA, do not depend upon any duties created solely by the FDCA, and do not depend on any state requirement that could not exist independently under state law in absence of the FDCA. The Ninth Circuit has specifically held that a claim was not preempted where it was "independent of the FDA's pre-market approval process" and it rested on a "state-law duty that parallels a federal-law duty."

*Stengel*, 704 F.3d at 1233–34. That is the case here. Indeed, although unpublished, and in the context of medical labeling as opposed to food labeling, the Ninth Circuit has expressly held that a parallel state law "misbranding claim" was not preempted where it imposed labeling requirements identical to those in the federal scheme. *See Jones v. Medtronic, Inc.*, 745 F. App'x 714, 717 (9th Cir. 2018) ("Federal law requires manufacturers of medical devices to update labeling in accordance with new intended uses of approved devices. A claim alleging a parallel Arizona state-law 'misbranding' claim would therefore not be preempted.").

Some defendants have tried to argue that the Sherman Law's incorporation by reference makes it "depend" on the FDCA because "if the 'FDCA ceased to exist, there would be nothing for the Sherman Law to incorporate.'" *See, e.g.*, *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *15. The defendant in *Chong* asserted as much. *Chong*, No. 21-cv-4528-RS, ECF 20 at 11–12. But this is a semantic argument about the mechanism by which a state invokes its separate (and historic) authority to regulate food labels, not the source of that authority itself. As Judge Gilliam explained when rejecting this argument, "[t]he relevant preemption inquiry is whether the Sherman Law imposes state-law requirements parallel to the FDCA (which it does), not whether, in some hypothetical world where the FDCA disappeared in a puff of smoke, the Sherman Law would still impose those requirements." *Vassigh*, 2015 U.S. Dist. LEXIS 90675, at *12–16.[4]

### 2. The presumption against preemption weighs in Plaintiff's favor.

If there were any doubt about the application of *Buckman* and implied preemption here, the presumption against preemption should put it to rest. The first step in the implied preemption

---

[4] Even if the incorporation by reference did somehow hinder Plaintiff's claims, Plaintiff seeks to impose portions of the Sherman Law above and beyond the provision that explicitly incorporates the FDA regulations. For example, with regards to the front label claim, Plaintiff sues in part to enforce Cal. Health & Safety Code § 110660 that states "Any food is misbranded if its labeling is false or misleading in any particular." This language is identical the federal regulation at 21 U.S.C. § 343(a) that states "A food shall be deemed to be misbranded . . . if its labeling is false or misleading in any particular." California originally enacted the statute, previously found at Cal. Health & Safety Code § 26490, in 1939. *See People v. 748 Cases of Life Saver Candy Drops*, 94 Cal. App. 2d 599, 607 (1949) (applying section 26490 prohibition on "labeling is false or misleading in any particular" in food labeling claim in 1949). Thus, not only is the regulation of food historically a state police power, this particular statute exists and has existed independently of, and parallel to, the federal regulation.

analysis is determining whether there is a presumption against preemption by virtue of the state's historic police powers. If a federal law implicates a state's historic police powers, then a court must "start with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (internal quotation marks omitted). This approach "is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Id.* Therefore, "[p]arties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming th[is] starting presumption that Congress does not intend to supplant state law.'" *Stengel,* 704 F.3d at 1227–28 (quoting *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)).

In *Buckman*, the Court explicitly held that the presumption against preemption did not apply because the plaintiffs' "fraud-on-the-FDA" claim did not implicate "a field which the States have traditionally occupied . . . such as to warrant a presumption against finding federal pre-emption of a state-law cause of action." 531 U.S. at 347 (internal quotation marks and citation omitted). Without evidence of the state's historical police power, the Court concluded that it was the "FDA's responsibility to police fraud consistently with the Agency's judgment and objectives" and therefore the "federal enactments" were a "critical element" to the plaintiffs' case. *Id*. at 350, 352.

By contrast here, in the context of food labeling, there is a strong presumption against preemption because the regulation of health and safety, including laws regulating the proper marketing of food, are traditionally within states' historic police powers. *See Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.") (citing *Plumley v. Massachusetts,* 155 U.S. 461, 472 (1894)). Indeed, "Representative Henry Waxman—who introduced the NLEA in the House of Representatives—stated specifically that the NLEA 'recognizes the importance of the State role: by allowing *States* to adopt standards that are identical to the Federal standard, which may be enforced in State court; by allowing the *States* to enforce the Federal Standard in Federal

court.'" *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008) (quoting Remarks of Rep. Waxman, 136 Cong. Rec. 1539 (daily ed. July 30, 1990)).

This presumption against preemption leads to the conclusion that claims that lie in the historic police power of the state do not run afoul of a federal enactment. Here, unlike in *Buckman*, there is no federal police power to supplant a lack of historical state police power over food labeling. In *Buckman*, the Court analyzed the elaborate statutory scheme that would be disrupted by a state action. Here, to the contrary, Congress did not enact a statutory scheme to govern a relationship between a federal agency and a manufacturer, but rather intentionally left the door open to enforcement of the NLEA through state law. Unlike the preemption provision at issue in *Buckman*, the NLEA explicitly states that the Act "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1]." NLEA § 6(c)(1) (emphasis added); *see also Wyeth v. Levine*, 555 U.S. 555, 575 (2009) ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them." (internal quotation marks omitted)). This language undermines any conclusion that the NLEA was intended to impliedly preempt state law claims seeking to enforce labeling standards that are identical to the federal standards. Thus, allowing state law claims to proceed, Congress declined the opportunity to adopt a more sweeping express preemption clause, as it did in the section 360k(a) of the MDA, undermining any conclusion that Congress intended the NLEA to impliedly preempt state law claims seeking to enforce labeling standards that are identical to the federal standards. *See Wyeth* at 574–75; *Hendricks v. StarKist Co.*, 2014 U.S. Dist. LEXIS 41523, 2014 WL 1244770, at *5–6 (N.D. Cal. Mar. 25, 2014) ("Although Defendants argue Plaintiffs should not be allowed to 'circumvent' the FDCA's bar on private enforcement, this argument falls flat in light of the ample [legislative history] evidence that Congress and the FDA intended that the states would be free to adopt a statutory scheme paralleling the FDCA and offer a private suit of enforcement of those parallel state regulations.").

In sum, Plaintiff's claims are independent state law claims that are parallel to federal regulations. Plaintiff is not pursuing a fraud-on-the-agency theory that does not have a state law corollary like in *Buckman*. Nor is she pursuing a medical device claim under the MDA, where Congress has evidenced its intent to occupy the field by granting the FDA several enforcement mechanisms. To the contrary, Congress explicitly left the door open to state law claims and opted to forego an express preemption clause in order to allow consumers to pursue state law claims to remedy injuries that result from misbranded foods. Thus, the Court should revisit its *Chong* conclusion and join the majority of courts in this District to find that Plaintiff's claims are not preempted.

### E. Plaintiff's Claims Are Not Expressly Preempted.

As explained above, the FDCA preemption provision expressly preserves parallel or identical state law claims. *See* 21 U.S.C. § 343-1(a)(5); *see also Hawkins* at 769. Here, California regulations are identical to the FDCA regulations and therefore, the only way to find express preemption is if Defendants can establish their conduct is expressly permitted by the regulations. *See Samet v. P&G*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, at *20 (N.D. Cal. June 18, 2013) ("Express preemption is especially appropriate where the practice identified by the plaintiff is explicitly governed by either the FDCA or its regulations, and the defendant is in compliance with those requirements."). Unlike the defendant in *Chong*, Defendants cannot establish their conduct is permitted for two independent reasons.

#### 1. FDA regulations do not expressly permit front label claims without %DV for protein in the NFP.

Plaintiff alleges that Defendants violated FDA regulations by making front label protein claims without providing in the NFP a statement of the corrected amount of protein per serving expressed as a %DV, as required by 21 C.F.R. § 101.9(c)(7)(i). *See* ECF 45 at ¶¶ 6, 19, 44. Defendants do not argue that Plaintiff's unlawfulness claim is expressly preempted, even using their mistaken framing as an omission-based claim. Nor did the Court in *Chong* find such a claim would be expressly preempted. Defendants did not comply with identical state and federal

regulations, and therefore Plaintiff's claim based on the front label claim being unlawful in the absence of a %DV for protein in the NFP is not preempted.

    2. *FDA regulations do not expressly permit using an incorrect nitrogen method for front label protein quantity claims.*

  Plaintiff alleges that Defendants miscalculated the front label quantity of protein by improperly executing the nitrogen method that is prescribed in the FDA regulations. Specifically, the FDA regulations allow for the use of a factor of 6.25 to convert the measure of nitrogen to protein in determining protein content for the grams listed in the NFP. However, the regulations provide a limitation, by allowing for the use of 6.25 "**except when official AOAC procedures described in this paragraph (c)(7) require a specific factor other than 6.25, that specific factor shall be used.**" 21 C.F.R. § 101.9(c)(7). The AOAC procedures for wheat protein—the primary protein source in Defendants' products—require a conversion factor of 5.7. The use of the improper factor results in a number in the NFP that is both false and unlawful.

  Defendants have always maintained that they have used the nitrogen method allowed by the regulations. *See* ECF 47 at 1. However, it turns out that Defendants were not using the appropriate AOAC method and therefore cannot argue that their conduct is expressly permitted. In *Chong*, the Court's conclusion that the plaintiff's claims were preempted rested on the finding that "the regulations expressly authorize use of the nitrogen method when stating the quantity of protein in grams in Nutrition Facts panels" and that "the regulations establish[] that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method." *Chong*, 2022 U.S. Dist. LEXIS 27438, at *7, *9. Setting aside whether that conclusion is correct, the reasoning cannot preempt Plaintiff's claims here because Kodiak did not use the regulatorily-blessed nitrogen method correctly and is therefore not in compliance with the regulations that *Chong* held authorized the protein claim at issue in that case.

  Because Defendants cannot point to a regulation with which they comply, Plaintiff's claim that the front label protein claim is literally false by virtue of the wrong nitrogen factor as prescribed in the AOAC method is not preempted as a matter of law.

3. *FDA regulations do not expressly permit using nitrogen method on front label.*

Plaintiff's claim that Defendants' stand-alone, nitrogen-based protein quantity statement is misleading is not expressly preempted because it directly parallels FDA regulations. *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("The NLEA does not preempt state law-based causes of action that are identical to the federal labeling requirements."). In particular, 21 C.F.R. § 101.13(i)(3) provides that a manufacturer may not make any "statement about the amount or percentage of a nutrient" such as protein, if doing so is "false or misleading in any respect." Defendants' products use low quality protein sources that provide, nutritionally speaking, ***only half*** of the protein that the front label claims. Advertising 14 grams of protein on a product that can provide only 7 grams of protein is misleading.

Indeed, the FDA has explicitly acknowledged that stating "***protein quantity alone can be misleading on foods that are of low protein quality***" when it promulgated the protein NFP regulations. 58 Fed. Reg. 2079 at 2101–2 (emphasis added). It has underscored this point several times. In other guidance the FDA has stated that "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption, ***a statement declaring that the product contained a specified amount of a nutrient could be misleading***." 56 Fed. Reg. 60421, 60426. FDA has also explained that "[b]y its very presence, such a [quantitative] statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." *Id*.

As a result, the FDA structured the protein regulations to account for the fact that nitrogen quantity alone can be misleading on low quality protein products. Indeed, § 101.9(c)(7)(i) explicitly ***prohibits*** a manufacturer from stating a nitrogen-based protein quantity figure ***alone*** in the NFP when a product makes a front label protein claim. It requires that if a manufacturer is advertising a product on the basis of protein, it can no longer simply state a nitrogen based quantity figure in the NFP; instead, it ***must*** provide, ***immediately adjacent*** to the quantity figure,

"***a statement of the corrected amount of protein***" in the product based on PDCAAS and expressed as a %DV. 21 C.F.R. § 101.9(c)(7)(i)-(iii) (emphasis added). The FDA, again, explicitly stated when promulgating this requirement that this was "to prevent [consumers] from being ***misled*** by information on ***only the amount*** of protein present" in the NFP. 58 Fed. Reg. 2079, 2102 (emphasis added).[5] Given this, the only way to interpret 21 C.F.R. § 101.13(i)(3) is to determine that it creates the same prohibition for the front of the package that section 101.9(c)(7)(i) creates for the back: manufacturers cannot state protein quantity alone.[6]

In *Chong,* this court adopted the reasoning of *Nacarino v. Kashi* to hold that claims regarding the misleading nature of a front label claim based on nitrogen testing are expressly preempted. *Nacarino* agreed with the general premise that nitrogen-based front label protein claims "may well be 'misleading' in the colloquial sense" due to the way low quality proteins operate in the human body. *Nacarino v. Kashi Co.*, No. 21-cv-7036, 2022 U.S. Dist. LEXIS 23409 at *7–*8 (N.D. Cal. Feb. 9, 2022). It nevertheless concluded that such claims could never be misleading in the "regulatory sense" of § 101.13(i)(3). *Id.* According to the Court, the claims were not misleading in the "regulatory sense" because § 101.9(c)(7) "authorizes" a manufacturer to state protein quantity via "the nitrogen-content method without quality adjustment . . . in the Nutrition Facts label" and "to hold otherwise would be to find that an FDA-approved protein measurement technique is inherently misleading." *Id.*

As explained above, *Nacarino*'s reasoning that an FDA-approved measurement technique can never be misleading directly conflicts with the FDA's official opinion that "***protein quantity alone can be misleading on foods that are of low protein quality.***" 58 Fed. Reg. 2079 at 2101–2 (emphasis added). Indeed, how the human body utilizes protein and whether that is accurately

---

[5] *Nacarino* downplayed this aspect of the regulations by reasoning that the %DV "is not to remedy an otherwise misleading figure, but to supply protein-conscious consumers with information that gives them further assistance in deciding what to buy." 2022 U.S. Dist. LEXIS 23409, at *9. But that rationale is contrary to the official agency opinion stating the exact opposite, which *Nacarino* does not appear to consider or discuss.

[6] Plaintiff's claim does not require Defendants to do anything other than not state protein quantity alone on the front of the package. There are also many other ways Defendants could comply with this. For example, they could make no front label protein claims; they could provide both quantity and quality statements immediately adjacent to one another (i.e., match the NFP); or they could state only the corrected amount of protein as determined under 21 C.F.R § 101.9(c)(7)(ii).

reflected in various protein measurement techniques is clearly within the FDA's "scientific expertise" and *Nacarino* should not have substituted its "judgment for that of the agency" on whether an FDA approved technique can be misleading in particular contexts. *Friends of the Santa Clara River v. United States Army Corps of Eng'rs*, 887 F.3d 906, 924 (9th Cir. 2018). Given the FDA's official position, *Nacarino*'s distinction between misleading statements in the "colloquial sense" versus those in the "regulatory sense" is a mistaken one. FDA makes clear that protein claims like Defendants' may be misleading in both senses.

    *Nacarino* is additionally flawed because "[a] regulation cannot be susceptible to a construction that ignores or renders meaningless parts of its language." *Mont. Air Chapter No. 29, Ass'n of Civilian Technicians, Inc. v. Fed. Labor Relations Auth.*, 898 F.2d 753, 762 (9th Cir. 1990). *Nacarino*'s conclusion that a testing methodology is inherently non-misleading in all contexts so long as the FDA has approved it for use in the NFP renders §§ 101.13(c) and 101.13(i)(3) meaningless. If *Nacarino*'s interpretation were correct, then any information from the nutrition facts panel would automatically qualify as a permissible front-of-pack nutrient content claim because all of those figures are necessarily supported by an FDA-approved testing methodology. But the FDA made clear in § 101.13(c)—which *Nacarino* did not discuss—that information stated in the NFP is not automatically permissible to use as a nutrient content claim and can be stated on the front package ***only*** if it meets the other nutrient content claim requirements. That includes § 101.13(i)(3), which clearly contemplates that stating the "amount or percentage of a nutrient" can sometimes be "misleading" at least in some respects. The Ninth Circuit has explicitly recognized that these two regulations create different sets of rules for the NFP and for nutrient content claims. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 770 (9th Cir. 2018) ("The rules that govern claims made within the Nutrition Facts Panel and the rules that govern nutrition content claims elsewhere on the label are different."); *id.* at 767 ("*a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product*.") (emphasis in original, quotation omitted).

    This likely stems from the FDA's recognition that although certain things may be appropriate to state in the NFP in a summary fashion, it may not be an appropriate basis on which

to market a product. *See* 56 Fed. Reg. 60366 (Nov. 27, 1991) (voluntary declaration of nutrients "is viewed by the agency as an effort to market the food as a significant source of nutrients").

Given that FDA has stated that "protein quantity alone" on low quality protein products "can be misleading," 58 Fed. Reg. 2079 at 2101–2, there is no "simple," magic bullet solution that so long as the FDA has approved of a testing method for the NFP, it has determined the method can ***never*** be misleading in any other context. Instead, the FDA recognizes that some statements may be misleading outside of that context of the NFP. That is the case here.

*Nacarino* found that *Reid* and *Hawkins* both state the "exception, not the rule" to whether NFP statements can qualify as nutrient content claims. 2022 U.S. Dist. LEXIS 23409, at *10. But even if that were true generally, *Nacarino* ignores that this case also presents such an "exception." This case centers ***specifically*** on products that use low quality proteins. Plaintiff's position is ***not*** that nitrogen-testing is inherently misleading. When a product consists of high quality proteins, nitrogen testing can provide an accurate, non-misleading picture of protein content. The problem arises when a product consists of low-quality proteins like Defendants'. In that scenario, nitrogen testing yields inflated numbers—***which the FDA has explicitly recognized***. It suggests that consumers will receive all the protein claimed, even though that is simply not true. Here, over half the protein is useless to humans. ECF 45 at ¶ 31-33. Representing protein quantity of low quality proteins on the front of product packages is fundamentally misleading when stated without any context as to its quality.

Moreover, just as in *Reid* and *Hawkins*, where the FDA had issued guidance calling into question front of pack "no trans fat" claims, the FDA here has also issued guidance explicitly recognizing that "protein quantity alone can be misleading on low quality protein products." In other words, the FDA recognizes the problem and it structured its regulations to address it both in the NFP through § 101.9(c)(7)(i)-(iii) and on the front through §§ 101.13(c) and 101.13(i)(3).

*Nacarino* also distinguished *Reid* and *Hawkins* on the basis that the claims "were uncontrovertibly false in a way that the claim in this case is not: It is not true to say that a product does not contain fat when it does." *Nacarino*, 2022 U.S. Dist. LEXIS 23409, at *11. But, the regulation at issue in this case—§ 101.13(i)(3)—does not prohibit only "uncontrovertibly false"

claims; it prohibits **misleading** claims too. By definition, a claim is misleading when "although true, [it] is either actually misleading or [] has a capacity, likelihood or tendency to deceive or confuse the public." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). *Nacarino* necessarily found that Kashi's front label protein claims may be misleading in this sense. 2022 U.S. Dist. LEXIS 23409, at *7. And, as explained above, the FDA agrees. This precludes preemption.

Defendants also rely on the FDA webpage to argue for preemption, but the webpage does not offer any new analysis of the regulations, and instead largely repeats the exact wording of the regulations at issue. *Compare* https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label#LabelClaims *with* 21 C.F.R. §§ 101.9(c)(7), 101.13(o). Defendants propose a reading of the webpage that is self-serving and contrary to the regulatory scheme as a whole. The question asks which method to use for a "protein nutrient content claim." Assumed in the question is that the claim will not be false or misleading, otherwise, the claim cannot be made at all. *See* 21 C.F.R. § 101.13(c); 21 C.F.R. § 101.13(i)(3). Thus, it is a reasonable interpretation of the webpage that the FDA is assuming the claim will not be false or misleading. In other words, a fair reading of the page is that "either of the methods mentioned" may be used so long as it does not result in a claim that is false or misleading.

Both the regulations and the webpage contemplate circumstances where the nitrogen method will result in a misleading claim, and allow for the use of PDCAAS for the calculation of the quantity to prevent consumers being misled or confused. *See* 58 Fed. Reg. 2079 at 2101–2. Simply put, Defendants are reading more into the regulations and webpage than is plainly stated. The FDA has provided that either method (nitrogen or PDCAAS) may be used. Nothing on the webpage supplants the prohibition on a claim being false and misleading. Thus, the standards are clear: where a claim is made, Defendants must use the method that results in a claim that is not misleading. Defendants' use of the nitrogen method results in a misleading claim and therefore they must adjust the claim or remove it to avoid running afoul of the regulations.

**F.      Protein Claims are Nutrient Content Claims.**

Whether Defendants' protein representation is a nutrient content claim is a question that has already been decided in this case and conceded by Defendants and therefore the law of the case. ECF 35 at 4 (Order Denying Motion to Dismiss) (concluding Defendants have made a nutrient content claim, citing 21 C.F.R. § 101.13(c)); ECF 62 at 3 (Order Denying Motion to Dismiss the First Am. Compl.) (concluding Defendants' protein claim is a nutrient content claim); ECF 16 at 17 (Defendants' first motion to dismiss) ("the statement '14g protein' on the front of the Kodiak Cakes Mixes is a protein content claim."); ECF 47 at 23 (Defendants' Motion to Dismiss FAC) ("The gravamen of the case concerns the truthful protein-content claims on the boxes."); *see also Vanleeuwen v. Keyuan Petrochemicals, Inc*., No. CV 11 - 9495 PSG (JCGx), 2013 U.S. Dist. LEXIS 72683, at *21–28 (C.D. Cal. May 9, 2013) (applying law of the case to holdings in an order on motion to dismiss).

Despite this, Defendants push on with their failing argument. However, no matter how many times Defendants claim otherwise, a statement of protein quantity is a nutrient content claim. The claims on the front labels of Defendants' Products that state the amount of protein in the product are nutrient content claims. At least three separate regulations make this plain. First, 21 C.F.R. § 101.13 states that "An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" Second, 21 C.F.R. § 101.13(c) states that declaring on the front label of a product any information required to be stated in the nutrition facts panel "is a nutrient content claim and is subject to the requirements for nutrient content claims." And third, 21 C.F.R. § 101.13(i) explicitly regulates as a nutrient content claim any "statement about the amount or percentage of a nutrient."

The FDA confirmed this plain language interpretation in guidance that it published in conjunction with promulgating the regulations about the scope of 21 U.S.C. § 343(r) (FDCA). There, the FDA addressed a comment seeking to exclude from the scope of the regulations "simple factual information about the nutrient content of a food." 58 Fed. Reg. 2302–04 (Jan. 6, 1993). Answering the question, the FDA concluded "that section [§ 343(r)] of the act and

therefore these final regulations apply to statements of the amount of a nutrient in food [e.g. "5 grams fat"] as well as to statements of the level of a nutrient in food [e.g. "low fat"]." *Id.*

Every court that has addressed this issue, including the Ninth Circuit, has reached the same conclusion: a quantitative declaration of a nutrient on the front label is a nutrient content claim. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 770–71 (9th Cir. 2018) ("0g trans fat per serving" is a nutrient content claim under 101.13); *Reid*, 780 F.3d 952 (same); *N.Y. State Rest. As'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 125 (2d Cir. 2009) (quantitative statements are nutrient content claims); *Gubala v. HBS Int'l Corp.*, No. 14-cv-9299, 2016 U.S. Dist. LEXIS 58988, at *10 (N.D. Ill. May 4, 2016) (holding that the statement "25G Protein Per Serving" became a nutrient content claim when placed on the front label); *Red v. Kroger Co.*, No. CV 10-01025 DMG (MANx), 2010 U.S. Dist. LEXIS 115238, at *14–15 (C.D. Cal. Sep. 2, 2010) (same); *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628-GPC-WVG, 2018 U.S. Dist. LEXIS 78607, at *13–14 (S.D. Cal. May 9, 2018) ("1g Net Carb" is a nutrient content claim).

Defendants contort the regulations, published FDA guidance, and existing case law to support their incongruous position that a quantitative statement of nutrient content is not a "nutrient content claim." None of their arguments withstand scrutiny.

First, Defendants argue that the protein claims do not "characterize the level of protein in Kodiak's products as 'high' or 'low,' 'more,' or 'less,' and is thus not a nutrient content claim." ECF 114 at 12 (citing 21 C.F.R. § 101.13(b)(1)). However, that is *not* what 21 C.F.R. § 101.13(b)(1) states. Rather, it states: "*any* direct statement about the level (or range) of a nutrient in the food" is an express nutrient content claim. (Emphasis added). Indeed, the regulation provides as examples of such claims not only "low sodium," which "characterizes" the level of sodium, but also the statement "contains 100 calories," which is a direct, quantitative statement about the amount of calories in a product. *Id.* Moreover, to the extent the regulations require characterization to qualify as a nutrient content claims, Defendants' assertion that their claims do not "characterize" the level of a nutrient is simply wrong. In published guidance, the FDA stated "in a statement that includes a quantitative declaration, e.g., 'contains 2 grams of fiber,' the amount of fiber in the food is *characterized by the quantitative declaration, '2 grams.'*" *See N.Y.*

*State Rest. Ass'n*, 556 F.3d at 125 (explaining guidance). In other words, although a quantitative statement may not *implicitly* characterize a nutrient level, the FDA takes the position that it does *expressly* characterize it.

### G. Plaintiff has Standing to Assert the No %DV Claims.

Where a plaintiff pleads reliance on an unlawful labeling statement, and payment of a price premium as a result, they have alleged a cognizable economic injury for purposes of both statutory and Article III standing. *See Swearingen v. Amazon Pres. Partners, Inc.*, 2014 U.S. Dist. LEXIS 36830, at *7 (N.D. Cal. Mar. 18, 2014) (reliance on unlawful label claim provides statutory standing to pursue unlawful prong UCL claim); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (paying more for a product is a quintessential economic injury).

As Plaintiff alleges, Section 101.9(c)(7)(i) is clear that a manufacturer cannot make any protein claims whatsoever unless they have calculated the "corrected amount of protein per serving" using PDCAAS, and provided a statement to consumers of that corrected amount per serving in the form of a %DV for protein in the NFP. ECF 45 at ¶¶ 6, 19, 44. Kodiak did neither of those things, so it was not allowed to make any protein claims on the front label at all. Kodiak unlawfully made protein claims on the front of its packages to induce consumers to purchase the products at a premium price. The unlawful front label claim is the injury-producing conduct. Plaintiff alleges that she relied on the unlawful front label claim and paid a price premium as a result. Thus, she has pled a cognizable injury and has standing.

Defendants mischaracterize Plaintiff's claim as an omission claim and argue that "plaintiff cannot plausibly claim she was injured by the absence of the %DV when she did not examine, consider or rely on the %DV." ECF 114 at 8.[7] In *Chong*, this Court similarly concluded that "[d]ismissal likely would also be warranted on grounds that plaintiffs have not alleged a cognizable injury arising from the omissions." *Chong*, 2022 U.S. Dist. LEXIS 27438, at *11 n.1.

---

[7] Defendant relies on the recent *Nature's Path* decision to support its argument. However, the Court in *Nature's Path* dismissed with leave to amend. Plaintiff has amended. At most, this Court should similarly dismiss with leave to amend—i.e., grant Plaintiff's motion to amend.

Plaintiff's Opposition to Motion for Judgment on the Pleadings – Case No. 20-cv-02901-RS

However, as explained above, the unlawful and injury producing conduct is not the omission of the %DV but the presence of protein claims on the front label in the absence of the %DV. Because Plaintiff has alleged that she relied on the unlawful front label protein claims and paid a price premium as a result of those claims, she has alleged a cognizable injury. ECF 45 at ¶¶ 65-69.

Even if this Court agrees that as pled, the Complaint is an omission theory, Plaintiff has moved to amend to make her theory clear. ECF 113. As explained in Plaintiff's Motion for Leave to Amend, Plaintiff alleges she relied on the unlawful front label claims and paid a price premium as a result. That is all that is required for standing for her UCL unlawfulness claim. ECF 113 at 13–14.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendants' Motion for Judgment on the Pleadings.


Dated: April 29, 2022

                                          **GUTRIDE SAFIER LLP**


                                          */s/ Hayley Reynolds*
                                          Seth A. Safier (State Bar No. 197427)
                                            seth@gutridesafier.com
                                          Marie A. McCrary (State Bar No. 262670)
                                            marie@gutridesafier.com
                                          Hayley Reynolds (State Bar No. 306427)
                                            hayley@gutridesafier.com]
                                          100 Pine Street, Suite 1250
                                          San Francisco, California 94111
                                          Telephone: (415) 639-9090
                                          Facsimile:  (415) 449-6469

                                          Matthew T. McCrary (admitted pro hac vice)
                                            matt@gutridesafier.com
                                          4450 Arapahoe Ave., Suite 100
                                          Boulder, CO 80303
                                          Telephone: (415) 639-9090
                                          Facsimile:  (415) 449-6469

                                          *Attorneys for Plaintiff*